[Civil No. 1760.   Filed November 24, 1920.]

[192 Pac. 249.]

## A. R. JENKINS, Appellant, v. PEARL SKELTON, Appellee.

1. ACTION—MISJOINDER OF ACTIONS—NEGLIGENCE.—Where injuries to the person and to property both result from the same tort, the negligent act constitutes but one cause of action, and paragraph 427, Civil Code of Arizona of 1913, providing that in actions *ex delicto* there shall not be joined actions to recover for injuries to the person, to property or to character, has no application where the injury to the person and the damages to his property are the result of the same wrongful act.

1. Joinder of claims for injury to person and property arising out of single tort, see notes in 3 Ann. Cas. 464; Ann. Cas. 1912D, 256.

2. JUDGES—DISQUALIFICATION OF JUDGE—AFFIDAVIT.—Affidavit of disqualification must be filed in order to invoke the jurisdiction of the court in passing upon the matter of disqualification, and a party urging as error the refusal of a judge to grant a change to another judge must show that he has brought himself within the terms of the statute.

3. JURY—RIGHT TO DEMAND JURY TRIAL—WAIVER.—Failure to make demand in writing for jury before the calling of the docket, or in open court at the time the docket is called, in accordance with the statutory requirement, constitutes a waiver of the right to demand a jury trial.

4. DAMAGES—EVIDENCE—NEGLIGENCE.—Where there is no evidence of malice, fraud or gross negligence, the measure of damages is such an amount as will constitute a reasonable compensation for the loss actually sustained and punitive damages cannot be assessed.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Reversed and remanded.

### STATEMENT OF CASE.

Plaintiff-appellee sued the defendant-appellant to recover damages claimed to have been sustained by reason of the defendant driving his automobile into and against the automobile of the plaintiff on the public highway about seventeen miles out of Parker, Arizona.

Plaintiff alleged in his complaint, in substance, that he was driving on the highway from Parker, Arizona, toward Needles, California, and that defendant was driving from Needles toward Parker; that plaintiff, seeing defendant's car approaching, got out of and to the side of the road, leaving the whole of the road for the defendant, but that the defendant wantonly, recklessly and negligently, at a high rate of speed, drove his automobile upon and against the plaintiff's automobile. Plaintiff further alleged that the damages occasioned by the collision were (a), injury to plaintiff's car requiring repairs thereto in the sum of $249.50, (b) delay and loss of time, and damage and

injury to plaintiff's business, and (c) great pain and anguish of mind and body, and prayed for judgment in the sum of $1,500. Defendant specially demurred to the complaint as follows: "That the action set up in the plaintiff's complaint is an action *ex delicto,* and that the said plaintiff has attempted to join in said action a cause of action for recovery of injuries to the person of him, the said plaintiff, and to the property of the plaintiff." The demurrer was overruled November 4, 1918. February 6, 1919, the date of the trial, the minute entry of the court is to the effect that, upon the call of the case, plaintiff announced ready for trial, and "the cause having been theretofore regularly set for trial at this time, this case proceeds to trial in the absence of the defendant or his counsel upon the issues joined before the court without a jury." The minute entry further shows the defendant and his counsel appeared in court at 9:38 A. M. and requested that the cause be continued for one hour; that when the case was again taken up the defendant demanded a jury trial, which was denied by the court because made "after commencement of trial."

The reporter's transcript shows that "the above cause came on regularly to be heard on the sixth day of February, 1919, before the Honorable F. H. Lyman . . . sitting without a jury"; that both parties were present with their attorneys and that the defendant first asked leave to file an application for change of judges, and next demanded a jury trial, and that both requests were denied by the court as coming too late, the court announcing in that connection, "the trial had already begun before you came in this morning." The trial proceeded without a jury and resulted in a verdict and judgment for plaintiff in the sum of $1,223. Other facts necessary to the opinion are set out therein.

Mr. Fred C. Struckmeyer, Mr. Thomas W. Nealon and Mr. Clarence E. Johns, for Appellant.

Messrs. Alexander, Christy & Baxter, for Appellee.

ROSS, J.—The defendant assigns as error, (1) the overruling of his special demurrer; (2) the denial of his application for change of judge; and (3) the denial of his demand for a jury trial, and further, he asserts that the judgment "is largely excessive in that there is no evidence to sustain or warrant the plaintiff's right to recover the amount of said judgment, but that, on the contrary, the evidence affirmatively shows that plaintiff did not sustain damages in the amount as found."

The question raised by the special demurrer is one of first impression in this state and, inasmuch as the courts that have passed upon it are divided, we feel at liberty to adopt that view which appeals to us as best fitted to attain justice at the least trouble and expense to litigants. The courts that take the position that, where in the same tort a party has suffered both a personal injury and a property injury two primary rights are violated that give rise to two causes of action, do so upon the theory that it is not the negligent act, but the damage sustained, that gives rise to the cause of action.

It is also suggested by this same line of cases that because the statute of limitations, survivorship and assignability are different in the two classes of action, the practical administration of the law will be better effected if each injury is held to constitute a separate cause of action, even though they both grew out of the same wrong. Supporting this view we cite the following cases: *Reilly* v. *Sicilian Asphalt Paving Co.*, 170 N. Y. 40, 88 Am. St. Rep. 636, 57 L. R. A. 176, 62 N. E. 772; *Schermerhorn* v. *Los Angeles Pac. R. Co.*, 18 Cal. App. 454, 123 Pac. 351; *Lamb* v. *Harbaugh,*

105 Cal. 680, 39 Pac. 56; *Ochs* v. *Public Service R. Co.,* 81 N. J. L. 661, Ann. Cas. 1912D, 255, 36 L. R. A. (N. S.) 240, 80 Atl. 495; *Watson* v. *Texas etc. Ry. Co.,* 8 Tex. Civ. App. 144, 27 S. W. 924; *Boyd* v. *Atlantic Coast Line R. Co.,* 218 Fed. 653.

There is a somewhat more numerous line of decisions that has adopted the view that all the injuries, the natural consequences of the wrong, whether to property or to person, growing out of the same act, constitute but one cause of action which cannot be split. Such courts hold that a single act causing injury gives rise to but a single cause of action, even though the act may infringe upon different rights or affect different injuries. It is reasoned by these courts that one should not be twice vexed for one and the same cause; that the injuries to the person and to the property being inflicted by the same wrong, alike go to constitute the elements of one cause of action. *Birmingham Southern Ry. Co.* v. *Lintner,* 141 Ala. 420, 109 Am. St. Rep. 40, 3 Ann. Cas. 461, 38 South. 363; *Cassidy* v. *Berkovitz,* 169 Ky. 785, 185 S. W. 129; *Coy* v. *St. Louis & S. F. R. Co.,* 186 Mo. App. 408, 172 S. W. 446; *Mobile etc. Ry. Co.* v. *Matthews,* 115 Tenn. 172, 91 S. W. 194; *Braithwaite* v. *Hall,* 168 Mass. 38, 46 N. E. 398; *King* v. *Chicago etc. Ry. Co.,* 80 Minn. 83, 81 Am. St. Rep. 238, 50 L. R. A. 161, 82 N. W. 1113; *Kimball* v. *Louisville etc. Co.,* 94 Miss. 396, 48 South. 230.

We quote from *Mobile etc. Ry.* v. *Matthews, supra,* as being expressive of the views of the courts holding that the negligent act constitutes but one cause of action where injury to both person and property of a party is inflicted at the same time.

"The negligent action of the plaintiff in error constitutes but one tort. The injuries to the person and property of the defendant in error were the several results and effects of one wrongful act. A single tort can be the basis of but one action. It is not improper to declare in different counts for damages to the

person and property when both result from the same tort, and it is the better practice to do so where there is any difference in the measure of damages, and all the damages sustained must be sued for in one suit. This is necessary to prevent multiplicity of suits, burdensome expense and delays to plaintiffs and vexatious litigation against defendants. If necessary to prevent confusion in ascertaining the damages to be recovered for different injuries, separate verdicts may be directed.''

We agree with the reasoning of this case and others that adopt the same view. That provision (sec. 427, Civ. Code 1913), which provides, ''In actions *ex delicto* there shall not be joined actions to recover for injuries to the person, to property or to character; but they shall be sued for separately,'' has no application where the injury to the person and the damages to his property are the result of the same wrongful act, as in the present case. The demurrer was properly overruled.

There was not filed in the case, as required by law (paragraph 500, Civ. Code 1913), an affidavit showing that the judge was disqualified, and we assume that none was proffered to the court as none appears in the record. The defendant went no further than ''to ask leave to file an application for . . . change of judge.'' The law does not require that permission from the court must be obtained before filing an application for a change of judge, and error may not be based upon its refusal. Before it could be determined that the court had committed error, the affidavit setting forth the grounds of disqualification should be before the court, so that it may be ascertained whether it complies with the law or not. The affidavit of disqualification must be filed in order to invoke the jurisdiction of the court to pass upon the question of his disqualification. We think a party urging the refusal of a judge to grant a change of the cause to another judge should be required to show that he has brought

himself within the terms of the statute. This the defendant has failed to do.

The state Constitution, section 23, article 2, preserves the right of trial by jury, but provides that it may be waived by consent of the parties interested. It is silent as to how the waiver may be manifested. The statute, paragraph 508, Civil Code, provides that the docket shall be called on fixed dates and causes at issue set down for trial; that either party may demand in writing filed with the clerk before the docket is called, or in open court at the time the docket is called, a trial by jury and, if not so demanded, a jury trial shall be regarded as waived and the cause shall be tried by the court unless the court shall otherwise direct. Thus it is seen, under the provisions of the statute, mere silence or failure or neglect, at the times and in the manner provided, to demand a jury trial, constitutes a waiver thereof. Defendant made no written demand, and it seems that his oral demand in open court was not made at the time the docket was called and the cause set down for trial. According to the minute entry, February 6, 1919, was the date set for trial, as it is recited therein, "the cause having been theretofore regularly set for trial at this time, this case proceeds to trial in the absence of defendant or his counsel upon the issues joined before the court without a jury."

The cause had been at issue from November 4, 1918, when the demurrer was overruled. The court might well have based its ruling refusing a jury trial upon the failure of defendant to demand it in writing before the call of the docket or in open court at the time the case was set down for trial. The defendant having done neither, must be regarded as having waived a jury trial and consented to try his cause before the court. The above provision of our Constitution is

identical with section 21, article 1, of the Constitution
of the state of Washington. In *State ex rel. Clark* v.
*Neterer,* 33 Wash. 535, 74 Pac. 668, the Supreme Court
had occasion to pass upon a statute providing for an
implied waiver of trial by jury, a statute in that re-
spect like ours, and, after reviewing legislation of that
state upon that subject, the court held the law valid.
The provisions as contained in paragraph 508, *supra,*
concerning the waiving of trial by jury were in exist-
ence as paragraph 1389, Civil Code of 1901, at the
time of the adoption of our Constitution, and the rules
of construction would require us to give to the ex-
pressions in the Constitution about "waiver" the
meaning contained in the territorial statutes prior to
statehood, as the Constitution only undertakes to pre-
serve the right of trial by jury as it existed at the
time of its adoption. *Brown* v. *Greer,* 16 Ariz. 215,
141 Pac. 841.

It seems to be the contention of defendant that he
was entitled to have his case tried by jury upon de-
mand at any time before the commencement of the
trial, and, in support of this contention, he cites *Brown*
v. *Greer,* 16 Ariz. 222, 141 Pac. 843. In that case at
the time the demand for a jury trial was made, the
case was not at issue and was not properly upon the
docket of cases ready for trial. There are expressions
contained in the opinion which defendant construes
to mean "that to refuse either party the right to trial
by jury upon demand was reversible error." This
construction is not fairly deducible from the language
of the court, and if it were, we think the decision went
too far. On the contrary, it recognizes that a jury
trial may be waived in civil causes when such waiver
affirmatively appears of record. It would seem that
an implied consent to waive a jury trial is quite as
conclusive when clearly shown as an express consent.
*State ex rel. Clark* v. *Neterer, supra;* 24 Cyc. 149.

It is claimed by the defendant that we should look to the reporter's transcript and not the minutes of the court in determining this question. If we do, we find nothing therein indicating that he had not theretofore impliedly waived his right to trial by jury by failing to make proper demand therefor as in the statute provided.

We have come to the conclusion that the evidence fails to support a judgment for the amount awarded the plaintiff. The item set forth in the complaint for repairs to the injured automobile was supported by the evidence for the sum of $248. The evidence in support of the claim for delay and loss of time and damage and injury to plaintiff's business is very nebulous, not to say entirely wanting. True, the plaintiff says his business suffered a loss of $750 because of his enforced absence therefrom due to the injury of his car, but no effort was made to show how this loss was sustained. He was the president and general manager of a mining company engaged at the time in doing development work, and employed some four or five miners. He was absent from July 2d to July 28th. It is not shown that the work of development was stopped during this time, or that it was not diligently and intelligently prosecuted. Besides, if any loss had been shown in that regard, it would be the loss of the mining company and not defendant's. His salary was $250 per month, and he says it was not paid him for the month of July. He also says he was going to Los Angeles at the time of the accident to visit his family, who resided there. It is not made clear whether this stoppage of his salary was due to his taking a vacation or his enforced absence because of the injury to his car. In fact, there is no evidence worth while of actual loss except the item of $248 for repairs to the car.

There is likewise a dearth of evidence of "pain and anguish of mind." Plaintiff testified that something flew up in his face and he began to bleed. The extent or character of the injury is not mentioned. There is no suggestion of pain or suffering, or of disfigurement, or of loss of time on account of his being struck in the face. He says he had no doctor bill to pay. At best, his damages on this account could be but nominal.

But plaintiff insists that the accident was caused by the wanton, reckless and negligent conduct of defendant, and that he is entitled, under the evidence, to punitive damages; and, granting a failure to make out a case justifying a judgment for $1,223 actual damages, it is claimed the court might well have included in the judgment punitive damages. We have carefully examined the evidence, and cannot bring ourselves to believe that the trial court concluded therefrom that the defendant's conduct at the time of the accident was so flagrant and reckless as to justify his punishment. We say this because of the character of the evidence. The plaintiff's testimony was to the effect that, seeing defendant approaching him from the opposite direction, he parked his car to the right of the road at a curve therein, and that defendant was coming upgrade at about forty miles an hour. We use his own language to describe what happened:

"His front wheel lurched over towards me and slid right into me on the curve. I suppose the sand and the speed were the cause of its sliding. The front end will skid every time before the hind end. There was a sandy rut—tracks in the sand. Away from that and to the right it seemed to be more like clay. I do not know whether he had steered for my car. He might have the way he acted about it, but he didn't try to steer very far from it. I should think he endeavored to turn his car too late. I do not mean to say he deliberately drove into my car, but that it was carelessness, because it would be his fault if he skidded. If he doesn't know how to drive a car, he has no business on that kind of a road with one."

That the conduct of defendant was negligent, for which the plaintiff is entitled to be compensated, may be conceded. If he had exercised ordinary care, or the care of an ordinarily prudent person in the same circumstances, his car might not have skidded. If he had been going slower, or had steered his car with more skill, the accident might not have occurred. But can it be said that he could reasonably have foreseen that his car would skid or that he would be unable to control it? We think not, and if not—it cannot well be said that his conduct was wanton or reckless. The general rule with reference to exemplary damages, and when they may be assessed, is stated in 17 C. J. 974, section 271, as follows:

"In order that there may be a recovery of exemplary damages, there must be present in the circumstances some element of malice, fraud, or gross negligence, otherwise the measure of damages is such an amount as will constitute a just and reasonable compensation for the loss sustained, and nothing more. In other words, the wrongs to which exemplary damages are applicable are those which, besides violating a right, and inflicting actual damages, import insult, fraud or oppression, and are not merely injuries, but injuries inflicted in a spirit of wanton disregard of the rights of others."

As is said in *National Casket Co.* v. *Powar,* 137 Ky. 156, 164, 125 S. W. 279, 282:

"It is not every case of gross negligence that warrants the infliction of punitive damages. . . . It is only where the negligence manifests a wanton disregard of the lives or safety of others, or is wilful or malicious that such recovery is allowed."

We realize that it was the duty and province of the trial judge to pass upon the weight of the testimony, and we disclaim any intention or right to trench on that rule long and well settled in this jurisdiction. However, in this case, it seems too plain for discussion

XXI Ariz.—43

that the learned trial judge must have fallen into the error of assessing damages for loss of time and to business with no evidence to support it, or given punitive damages when the evidence falls short of making out a case for such damages.

The judgment is reversed and the cause remanded, with directions that a new trial be granted.

CUNNINGHAM, C. J., and BAKER, J., concur.