## STATE
*vs.*
## WILLIAM OWEN VAN KEEGAN

Court of Common Pleas    Fairfield County    File No. 7924

MEMORANDUM FILED OCTOBER 4, 1944.

*Albert L. Coles,* of Bridgeport, for the Plaintiff.

*Pullman and Comley,* and *John Barton,* of Bridgeport, for the Defendant.

DEVLIN, J.   The defendant is charged with a violation of section 1161c of the 1935 Cumulative Supplement to the General Statutes, which provides that no optical glasses or kindred products or other instruments to aid vision shall be sold at retail except (1) under the supervision of a licensed optician, and (2) in a licensed optical establishment, office or store.

It is conceded that neither the defendant nor his place of business is licensed.

It is also admitted that the defendant did the acts complained of in the information, but only on the prescription of a licensed physician employed by him and serving his customers on the premises and that in conducting his establishment and selling optical glasses or kindred products the defendant did not attempt to measure the vision of the eye.

A demurrer has been filed to the information claiming, first, that the statute is unconstitutional in that it attempts an unlawful delegation of legislative power to an administrative body without adequately specifying the standards by which the business shall be regulated and the conditions upon which licenses shall be issued; and second, that since defendant sells optical glasses on prescription from a licensed physician he is exempt from the provisions of the Act.

It is the inherent right of all to engage in the common business occupations or employments that are innocent and lawful in themselves without being interfered with.   Where, however, the pursuit concerns, in a direct manner, the public health and welfare, and is of such a character as to require a special course of study or training, or experience, to qualify

one to pursue such occupation with safety to the public interests, it is within the competency of the Legislature to enact reasonable regulations to protect the public against the evils which may result from incapacity and ignorance. 12 C. J. Constitutional Law, §431, p. 922.

The regulation of the practice of optometry falls within the power which the Legislature may exercise in the protection of public health and welfare. *Sage-Allen Co., Inc., vs Wheeler*, 119 Conn. 667.

The present statute seeks to govern "the conduct of the business of dispensing or grinding optical glasses and instruments for the general optical business, and the producing and reproducing of ophthalmic lenses and kindred products and the mounting of the same to supporting materials and the fitting of the same to the eyes." (Cum. Supp. [1935] §1160c.)

The purpose of the Legislature in the statute in question was to guard the public against the practices of so-called opticians not properly qualified or against conduct by those who have qualified which is likely to be harmful in its result. While the practice of optometry has been considered within the realm of public regulation it is also within legislative competence to determine that scientific and trained adjustment of eyeglasses and of the lenses of which they are made, to the particular organs of vision of each indvidual, will be likely to affect a more complete correction of poor eyesight than the untrained or unaided selection by a person himself or by one not trained. This appears to be a reasonable effort to accomplish an improvement in the general health of the community with respect to the organs of vision and comes within its police powers.

While the law-making function of the State is vested exclusively in the legislative branch and the Legislature cannot delegate this power to any other department or agency, it may, however, in creating a law complete in itself and designed to accomplish a particular purpose, expressly authorize an administrative agency to fill up the details by prescribing rules and regulations for the operation and enforcement of the law.

It is well settled that statutes which purport to give to administrative officials an absolute and uncontrolled discretion to grant or refuse permission to do something which all citizens similarly situated have an equal right to do are unconstitutional. *State vs. Conlon,* 65 Conn. 478; *State vs. Coleman,* 96 id., 190.

The test is well stated in the case of *State vs. Stoddard,* 126 Conn. 623, 628, in the following language: "In order to render admissible such delegation of legislative power....it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle to which the administrative officer or body must conform, with a proper regard for the protection of the public interests and with such degreee of certainty as the nature of the case permits...."

In dealing with the general conduct of the business, the Commission is given authority to grant licenses (Cum. Supp. [1935] §1162c) where satisfactory evidence is introduced that the place of business is being conducted in accordance with regulations. Section 1160c authorizes the making of rules and regulations "not inconsistent with law" and the regulations subsequently adopted set out sufficient standards for the protection of public interests and for the guidance of those in the trade.

It is not possible to detail all of the regulations, but the following may be mentioned as quite in point:

Reg. 2. (7) and (8) relating to statements as to the value or usefulness of various types of glasses.

(13) As to the manner of stating prices in advertising.

(16) As to contagious or infectious disease.

(19) As to inferior goods.

(21) and (22) As to retail sales in conjunction with wholesale distribution.

Reg. 8. Specifying equipment required in each place of business.

Reg. 22. As to requirements for opticians in charge.

Reg. 27 As to standard quality for sunglasses.

Defendant admits the above regulations may well be within the powers and duties of the Commission, but questions they are for the "public good." He further argues that no definite line has been drawn within which the Commission may act and the power of enacting arbitrary rules discriminating against some is always present. The answer to this claim is that each rule or regulation may be considered separately and as long as

it has some reasonable relationship to the objectives of the legislation it will be upheld. If an abuse of authority is claimed, the remedy is to review, by some appropriate proceeding, the conduct of the Commission, not to attack the validity of the Act.

In dealing with the question as to who may be licensed as an optician, section 1164c provides no license shall be issued "until the applicant shall have passed the examination required by said Commission...."

Defendant claims this is unconstitutional because while it prescribes conditions upon which one may be "admitted to take the examination" the statute does not state the subjects upon which the applicant is to be examined nor the standards by which he is to be judged and thus amounts to a delegation of power without adequately setting out the standards to be followed.

The delegation may include not only the power of determining an applicant's intellectual fitness and educational qualifications, but also his moral fitness, or the power may be broad enough to cover the general fitness of the applicant. 41 *Am. Jur., Physicians and Surgeons*, §19, p. 147.

The statute provides the examination shall be before the Commission of Opticians; that the applicant must be 21 years or older and of good moral character; that he must have had at least four years' practical experience in a place or places where optical glasses or instruments were dispensed from given formulas, of which experience one year at least, within the five years last preceding the date of such application, shall have been had in an optical store, establishment or office, in the United States, and under the personal supervision of a licensed optician or a mechanical optician or the equivalent of such experience; that proof of a diploma issued by a reputable college for opticians shall be equivalent to time spent under the supervision of a licensed optician; and that a duly licensed optician in any other state or country may be admitted in this State in accordance with such regulations as may be prescribed by the Commission.

Thus, the general standard of fitness and the character and scope of the examination are clearly indicated. Whether the applicant possesses the qualifications inherent in that standard is a question of fact. The decision of that fact involves

ordinarily the determination of two subsidiary questions of fact. The first, what the knowledge and skill is which fits one to practice this calling. The second, whether the applicant possesses that knowledge and skill. The latter finding is necessarily an individual one. The former is one of general application and can be embodied in rules. The Legislature itself may make this finding of the facts of general application, and by embodying it in the statute make it law. When it does so, the function of the examining board is limited to determining whether the applicant complies with the requirements so declared. But the Legislature need not make this general finding. To determine the subjects of which one must have knowledge in order to fit him to become an optician; the extent of knowledge in each subject; the degree of skill requisite; and the procedure to be followed in conducting the examination; these are matters appropriately committed to an administrative board and the Legislature may delegate to such commission the function of determining these things, as well as the function of determining whether the applicant complies with the detailed standard of fitness. *Douglas vs. Noble,* 261 U. S. 165.

The subjects forming the basis of the examination, however, must have a real and substantial relation to the objectives sought. "The nature and extent of the qualifications required must depend primarily upon the judgment of the State as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty. It is only when they have no relation to such calling or profession, or are unattainable by such reasonable study and application, that they can operate to deprive one of his right to pursue a lawful vocation." *Dent vs. West Virginia,* 129 U. S. 114, 122.

Where the constitutionality of a statute is questioned, every presumption and intendment should be made in its favor. *State vs. Miller,* 126 Conn. 373, 377.

An intention to pass an unconstitutional act will not be imputed to the Legislature. *State vs. Muolo,* 119 Conn. 323, 330.

In his second claim defendant relies on section 1158c of the Optometry Act (Cum. Supp. [1935] §1158c) as exempting him from the provisions of the Opticians Act. This section

exempts physicians and surgeons and "any person who shall sell spectacles or eyeglasses on presecription from any such physician or certified optometrist." Section 1179c of the Opticians Act (Cum. Supp. [1935] §1179c) exempts only certified optometrists.

It is his claim that when both of these sections are read together they demonstrate that the legislature considered the purposes of the opticians' law adequately safeguarded where sales of eyeglasses are made on prescription. "If persons selling on prescription are exempted from the broader prohibitions and controls of the optometry laws, surely the Legislature did not intend that they should be subject to regulations governing only a limited portion of the field of optometry."

When the law concerning the practice of optometry was enacted in 1925, it was not intended to control the business of opticians who manufacture or sell optical goods, but do not attempt to measure the vision of the eye and adapt lenses therefor. *Sage-Allen Co., Inc., vs. Wheeler,* 119 Conn. 667, 675.

When the present Opticians Act was enacted in 1935, it definitely set out to regulate the business by providing not only that the person selling should be licensed but also that the "establishment, office or store" wherein the goods were to be sold was to be licensed. The only exemption from the provisions of the Act were certified optometrists.

While the provisions of section 1158c have never been amended to coincide with the later enactment the court is of the opinion no claim of exemption exists in favor of this defendant.

The language of the Opticians Act is clear and the court is powerless to intervene even to remedy a mistake. To attempt to do so would be a palpable exercise of legislative functions. *McKay vs. Fair Haven & W. R. Co.,* 75 Conn. 608, 611.

The demurrer is overruled.